**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**
***Electronically Filed***

COMMONWEALTH OF KENTUCKY, *et al.*,

Plaintiffs,

v.

JOSEPH R. BIDEN, *et al.*,

Defendants.

Civil No. 3:21-cv-00055-GFVT

**DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL AND FOR IMMEDIATE ADMINISTRATIVE STAY**

Defendants respectfully seek an emergency stay pending appeal of the Court's November 30, 2021 Opinion and Order, ECF No. 50 ("Order"), which enjoined the Federal Government "from enforcing the vaccine mandate for federal contractors and subcontractors in all covered contracts in Kentucky, Ohio, and Tennessee." *Id.* at 29. Defendants also request that the Court enter an immediate administrative stay of that order while the Court considers the Defendants' stay motion, and to allow the Sixth Circuit time to consider an emergency stay motion if this Court does not issue one. As explained below, Defendants seek an emergency stay of the Court's order pending appeal given the Defendant's likelihood of success on appeal; the likelihood that the Government will suffer irreparable harm in the absence of a stay, including harm to its ability to contract under terms of its choosing and other governmental interests; and the likelihood of harm to third parties and the public interest.

Defendants understand the Court's order to prevent federal agencies from

enforcing, within the Plaintiff States of Kentucky, Ohio, and Tennessee, those contract provisions described in its order that are included in certain categories of government contracts pursuant to Executive Order 14042, so long as the preliminary injunction remains in place. Order at 29 (enjoining the Government "from enforcing the vaccine mandate for federal contractors and subcontractors in all covered contracts in Kentucky, Ohio, and Tennessee"); *see also* Transcript of 11/18/2021 Hearing ("Transcript"), at 66:12–17 ("THE COURT: It doesn't sound like you're trying to keep the federal government from including the provisions in their contracts. You just want an injunction against the enforcement of that provision preliminarily pending the final resolution. [Counsel for Plaintiffs]: That's right."); Defs.' Opp., ECF No. 27 at 31 ("any relief should merely block enforcement—not inclusion—of a COVID-19 safety clause."). Defendants also understand that the injunction is not limited to enforcement of the Safer Federal Workforce Task Force's vaccination requirements, but also prevents federal agencies from enforcing requirements related to masking and physical distancing. *See* 86 Fed. Reg. at 63,418; *id.* at 63, 420–21.

For the reasons set forth below, the Court should stay the effect of its preliminary injunction until the Defendants have completed their appeal. In the alternative, at a minimum, the Court should stay its order insofar as it prohibits Defendants from enforcing COVID-19 safety clauses in federal contracts with non-parties in Kentucky, Ohio, and Tennessee—a stay that would cause Plaintiffs no prejudice while otherwise preserving the status quo as Defendants seek appellate review.

**ARGUMENT**

The factors governing a request for a stay pending appeal are "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting

the stay." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Where the federal government is a party, its interests and the public interest overlap. *See Nken v. Holder*, 556 U.S. 418, 420 (2009).

## I. The Balance Of Harms And Public Interest Warrant A Stay Pending Appeal.

Because the balance of the harms and the public interest weigh so overwhelmingly in favor of a stay, Defendants address those factors first. As this Court has already recognized, the "OMB Determination provided ample support for the premise that a vaccine mandate will improve procurement efficiency." Order at 26; *see also* 86 Fed. Reg. 63,421–23; *see also* Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency Analysis, 86 Fed. Reg. 63418 ("OMB Determination").

Delaying the "implementation of the COVID-19 workplace safeguards issued pursuant to the Executive Order would result in a significant reduction in economy and efficiency in the Federal Government's procurement of essential services that are required to support the American people, combat the COVID-19 crisis, and carry out national security missions at a critical time for our Nation." Declaration of Lesley A. Field, the Acting Administrator and Deputy Administrator for Federal Procurement Policy in the Office of Management and Budget and member of the Federal Acquisition Regulatory Council ("FAR Council"). Ex. A, ¶ 3 ("Field Decl.").

Enjoining the enforcement of contract clauses that require vaccination, masking, and physical distancing will decrease the economy and efficiency of federal procurement. The effects of any injunction will not only impact federal operations, but will also disrupt contractor activity beyond the borders of the Plaintiff States and will undermine important national interests.

First, "the injunction will impose an immediate and significant category of harm in the form of productivity losses on Federal contracts performed in Ohio, Tennessee, and

Kentucky." Field Decl. ¶ 7. Losses will come from "schedule delays," "leave and health care costs for workers who are sick, isolating, or quarantined and unable to perform," "reduced performance quality," "delays in companies being able to return teleworking employees safely to physical workplaces," "reprocurement costs" and "downstream program impacts where one Federal program is dependent on the timely performance of another program that is supported by a contractor impacted by the injunction." *Id.* ¶ 9.

Second, delayed implementation of COVID-19 safeguards will disrupt productivity outside Kentucky, Ohio, and Tennessee. "Prime contractors in other states who depend on subcontractors covered by the injunction will likely experience delays of their own as they make schedule adjustments to accommodate subcontractors experiencing schedule delays, workforce shortages, and schedule disruptions, or look for other suppliers, which could drive up costs for Federal customers." *Id.* ¶ 16.

Finally, the disruption caused by the preliminary injunction will reverberate across the entire nation. "[M]ission disruptions" caused by inability to enforce COVID-19 safety protocols "will hinder the Federal Government's ability to combat the current COVID-19 pandemic, respond to COVID-19 variants and future pandemics as they arise, and carry out National security missions." *Id.* ¶ 18. "Major defense-related programs having activity spanning across all States will also be negatively affected by delays and disruptions caused in these three States," including "the manufacturing of munitions and aerospace parts for fighter jets, fueling nuclear submarines and aircraft carriers, and operation of research facilities for the advancement of defense capabilities related to science, technology, engineering, math, transportation, and logistics." *Id.* at ¶ 20.

By contrast, Plaintiffs have identified no irreparable injury that would result from a stay. Plaintiffs fail to identify any new contracts that they plan to seek that contain a federal vaccine requirement, *see* Order at 6, thus any harm they might suffer from "los[ing] out on future federal contracts" is purely speculative, *contra id.* at 26. Although Plaintiffs note that many companies in their states have contracts with the federal

government, they identify no imminent injury to those contractors that would result from a stay and make the unwarranted assumption that contractors generally oppose a vaccine requirement. Moreover, the Federal Government here is exercising *its* constitutional authority to manage federal contracts; the challenged actions thus do not invade an area "constitutionally reserved" to the state Plaintiffs. *Contra* Order at 27 (quoting *BST Holdings*, 2021 WL 5279381, at *8); *see also Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981). And "the individual Plaintiffs"—"who are suing in their *official* capacities," Order at 7 n.6 (emphasis added)—did not allege any "loss of constitutional freedoms" that would constitute irreparable injury. *Contra id.* at 27 (quoting *BST Holdings*, 2021 WL 5279381, at *8).

## II. The Government Is Likely To Succeed On The Merits.

Defendants acknowledge that this Court has found that EO 14042 likely exceeds the President's authority under FPASA, 40 U.S.C. § 121(a). Defendants nevertheless submit that they are likely to succeed in arguing to the contrary on appeal. The President, to whom FPASA expressly grants "a broad delegation of power" to manage federal procurement, *see* Order at 11, acted well within his delegated authority in issuing a federal contractor vaccine requirement to limit the spread of COVID-19 among the federal contractor workforce.

FPASA expressly empowers the President to "prescribe policies and directives that the President considers necessary to carry out" the Act's purpose of creating an "economical and efficient system" of federal procurement. 40 U.S.C. §§ 101, 121(a). "[T]his power has its limits," however. Order at 14. A presidential policy or directive must be "consistent" with FPASA, 40 U.S.C. § 121(a)—that is, it must "reasonably relate[] to . . . ensuring efficiency and economy in government procurement." *Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164, 170 (4th Cir. 1981); *accord AFL-CIO v. Kahn*, 618 F.2d 784, 793 & n.49 (D.C. Cir. 1979) (en banc).

EO 14042 easily satisfies this "lenient" standard. *See UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003). Faced with a once-in-a-century pandemic that upended the American economy, threatened the health of the American workforce, and disrupted the operations of federal contractors, it is hard to conceive of a procurement policy that would be more likely to create safer contractor work environments, reduce employee absenteeism, and reduce contractors' cost of labor over the long term than a vaccination requirement for contractor employees. Indeed, as this Court held, the OMB Director's thorough analysis of the economic impact of compliance with the Task Force guidance among federal contractors provides "ample support for the premise that a vaccine mandate will improve procurement efficiency." Order at 26; *see also* Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency Analysis, 86 Fed. Reg. 63,418, 63,418 (Nov. 16, 2021), http://federalregister.gov/d/2021-24949; ECF No. 27 at 14–16. Therefore, because there exists a self-evident nexus between the federal contractor vaccination requirement and economy and efficiency in federal procurement, EO 14042 rests squarely on the authority Congress delegated to the President under FPASA.

Plaintiffs are also unlikely to show that the challenged actions conflict with the Competition in Contracting Act ("CICA"), which requires "full and open competition" and "competitive procedures." 41 U.S.C. § 3301(a)(1). As Defendants explained, *see* ECF No. 27 at 12, *National Government Services, Inc. v. United States*, 923 F.3d 977 (Fed. Cir. 2019), upholds "the unremarkable proposition that a solicitation requirement . . . is not necessarily objectionable simply because that requirement has the effect of excluding certain offerors who cannot satisfy that requirement." *Id.* at 985-86; *contra* Order at 15. If anything, *National Government Services* teaches that solicitation requirements excluding officers do not violate CICA as long as the agency has a reason for establishing the requirement, which might be because the requirement will "likely result in reduced overall

cost for the procurement." 923 F.3d at 986. In other words, when the Government includes a clause that promotes economy and efficiency, it does not run afoul of CICA simply because some contractors refusing to enter a contract with that clause decline to submit a bid for that contract. So for the same reasons that EO 14042 and the Task Force guidance are likely to promote economy and efficiency in federal procurement, EO 14042 and its implementing guidance are unlikely to violate CICA.

Furthermore, FPASA's delegation raises no constitutional concerns. "Only twice in this country's history" (and only in 1935) has the Supreme Court "found a delegation excessive—in each case because 'Congress had failed to articulate *any policy or standard' to confine discretion*." *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (plurality opinion) (emphasis added) (quoting *Mistretta v. United States*, 488 U.S. 361, 373 n.7 (1989)). "By contrast," the Supreme Court has "over and over upheld even very broad delegations." *Id.* at 2129; *see also id.* at 2130–31 (Alito, J., concurring in the judgment) ("[S]ince 1935, the Court has uniformly rejected nondelegation arguments and has upheld provisions that authorized agencies to adopt important rules pursuant to *extraordinarily capacious standards*." (emphasis added)). Here, Congress did not "fail[] to articulate any policy or standard to confine [the President's] discretion," which is the only available basis upon which to find a congressional delegation invalid. *See id.* at 2129 (internal quotation marks and citation omitted). Rather, FPASA provides the requisite "intelligible principle" to which the President must conform, *see Mistretta*, 488 U.S. at 372, by authorizing him, as CEO of the Federal Government, to "prescribe policies and directives" that he "considers necessary" to promote economy and efficiency in the narrow field of federal procurement of property and services, *see* 40 U.S.C. § 121(a); *see also id.* § 101.

Nor do the challenged actions offend the Tenth Amendment. It is undisputed that Congress enacted FPASA under its Spending Clause authority, U.S. Const. art. I, § 8, cl. 1, and the Court squarely rejected Plaintiffs' argument that EO 14042 and its implement-

ing guidance exceed that authority. *See* Order at 14–15 n.9. And where, as here, "Congress acts under one of its enumerated powers"—and the Executive Branch acts pursuant to a delegation of those powers—"there can be no violation of the Tenth Amendment." *See United States v. Mikhel*, 889 F.3d 1003, 1024 (9th Cir. 2018) (citation omitted); *accord Town of Johnston v. Fed. Hous. Fin. Agency*, 765 F.3d 80, 86 (1st Cir. 2014); *United States v. Hatch*, 722 F.3d 1193, 1202 (10th Cir. 2013). This case is therefore plainly distinguishable from *BST Holdings*, *contra* Order at 20, in which the Fifth Circuit found that the federal action being challenged there "likely exceeds the federal government's authority under the Commerce Clause." 2021 WL 5279381, at *7. Moreover, there is no Tenth Amendment issue where the Federal Government, in exercising its constitutionally delegated authority, "step[s] into an area traditionally reserved to the States," *contra* Order at 20, or "displaces the States' exercise of their police powers," *see Hodel*, 452 U.S. at 291; *accord Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 550 (1985); *Maryland v. Wirtz*, 392 U.S. 183, 195 (1968). As the Supreme Court explained in *Garcia*, courts have "no license to employ freestanding conceptions of state sovereignty when measuring" federal authority under the Constitution, *id.* at 550, because any attempt by a court "to articulate affirmative limits on [federal] power in terms of core governmental functions and fundamental attributes of state sovereignty" is "both impracticable and doctrinally barren," *id.* at 556–57.

## III. The Court should stay its order as to non-parties or, if it does not issue such a stay, at least clarify that the United States is not enjoined from entering into mutual, voluntary agreements with non-party contractors to add and enforce the COVID-19 safety protocols.

Setting the merits aside, at a minimum, the Court should stay its order insofar as it prohibits Defendants from enforcing COVID-19 safety clauses in federal contracts with non-parties in Kentucky, Ohio, and Tennessee. As the Court explained, "redressability in the present case is properly limited to the parties before the Court." *See* Order at 28; *accord Gill v. Whitford*, 138 S. Ct. 1916, 1921, 1933–34 (2018); *Madsen v. Women's Health Ctr.*

*Inc.*, 512 U.S. 753, 765 (1994). But the Court's order appears to exceed that limitation by enjoining the United States from "enforcing the vaccine mandate," not just with respect to contracts with the named plaintiffs, but "for federal contractors and subcontractors in all covered contracts in Kentucky, Ohio, and Tennessee." Order at 29. Defendants recognize that the Court held that the Plaintiffs provided a sufficient showing that they would be injured by the enforcement of the COVID-19 safety clauses in contracts with other entities. *See* Order at 6. But Defendants respectfully contend that they are likely to prevail on that issue on appeal, because Supreme Court precedent forecloses a State's ability to bring suit against the federal government "to protect her citizens from the operation of federal statutes" like FPASA. *See Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007); *see also Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982) ("A State does not have standing as *parens patriae* to bring an action against the Federal Government." (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485-486 (1923), and *Missouri v. Illinois*, 180 U.S. 208, 241 (1901))). And because the Federal Government does not "invade[] areas reserved to the States by the Tenth Amendment simply because it exercises its authority . . . in a manner that displaces the States' exercise of their police powers," *Hodel*, 452 U.S. at 291, there is no threat to the Plaintiffs' sovereignty that would justify enjoining Defendants' enforcement of COVID-19 safety clauses against non-parties within Plaintiffs' borders. *Contra* Order at 6, 27. Accordingly, even if the Court does not stay its order in its entirety, the Court should limit its injunction to only prohibit Defendants from enforcing COVID-19 safety clauses contained in federal contracts to which Plaintiffs (or their state agencies or subdivisions) are a party.

Additionally, Defendants respectfully request that the Court provide clarification that its preliminary injunction does not prohibit private federal contractors in Kentucky, Ohio, and Tennessee from agreeing with Defendants to include COVID-19 safety clauses in their federal contracts, thus allowing those federal contractors to voluntarily comply with the Task Force Guidelines, including requiring their employees to be vaccinated.

Defendants believe this would be consistent with the scope of the injunction Plaintiffs requested. *See* Transcript at 65 ("[T]o be clear, Your Honor, our request for relief is not an injunction of any sort that would be applicable to -- that would enjoin private parties from doing whatever they want."); *see also id.* at 66 ("[C]ertainly, if a party in Kentucky was a subcontractor for a federal contractor outside these three states, and that other private party comes to them and says, We've, you know, . . . want to have this in our contracts and subcontracts, we're not seeking any injunction that would keep a private party from signing any contract they want."); *id.* ("What we want to enjoin is the Executive Order and then the actions taken by OMB, FAR and the Task Force pursuant to it that purport to *require* parties to agree to it as part of receiving or maintaining a federal contract." (emphasis added)).

**CONCLUSION**

Defendants respectfully request that the Court stay its order pending appeal and enter an immediate administrative stay while this motion is under consideration.

DATED: December 3, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
Assistant Director

*/s/ Zachary A. Avallone*
ZACHARY A. AVALLONE
DC Bar No. 1023361
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005

Phone: (202) 514-2705
Email: zachary.a.avallone@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On December 3, 2021, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Kentucky, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Zachary A. Avallone*
ZACHARY A. AVALLONE
Trial Attorney
U.S. Department of Justice